IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>vs.<br><br>DAVID FRITZ,<br><br>      Defendant. | ORDER AND MEMORANDUM DECISION<br><br><br><br>Case No. 2:05 CR 464 |

  Defendant David Fritz moves this court for an order suppressing all evidence obtained as a result of a search of his residence. Although the search was authorized by a warrant, Mr. Fritz argues that the warrant was only sought after officers impermissibly entered his home and detected the odor of marijuana. To resolve Mr. Fritz's motion, the court must determine (1) whether law enforcement officials would have sought a warrant if they had not initially entered Mr. Fritz's residence and noticed the smell of marijuana, and (2) whether the affidavit submitted in support of the warrant application establishes probable cause for a search even if the reference to the odor of marijuana in the residence is removed.

  The court concludes that law enforcement officials were determined to seek a warrant before the initial entry of Mr. Fritz's home and the discovery of the odor of marijuana. The court also concludes that the affidavit submitted in support of the warrant application establishes probable cause, even if all references to the odor of marijuana in Mr. Fritz's home are removed. Therefore, and as more fully set out below, Mr. Fritz's Motion to Suppress is DENIED.

Background

The warrant authorizing the search of Mr. Fritz's residence was issued based on an affidavit submitted by Officer Jeff Plank. In his affidavit, Officer Plank first outlined his considerable training and years of experience in drug interdiction matters, (Aff. ¶ 1), and then began describing a series of events occurring on May 16, 2006.

In the affidavit, Officer Plank described the arrest of Daniel Wilkey for possession with intent to distribute ten pounds of marijuana by officers of the Utah County Major Crimes Task Force. (Id. ¶ 2.) Mr. Wilkey told officers that he had obtained the marijuana from Nathan Yingling and that he believed that Mr. Yingling would provide him with an additional ten pounds if requested. (Id. ¶ 3.) Mr. Wilkey then called Mr. Yingling and told him that he would be interested in purchasing ten additional pounds of marijuana. (Id.) Mr. Yingling indicated that he could supply the ten pounds and told Mr. Wilkey that he would contact him shortly. (Id.) About an hour later, Mr. Wilkey received a call from Mr. Yingling, who stated that he had the marijuana and was ready to go through with the deal. (Id.)

Mr. Wilkey informed the officers that Mr. Yingling drove a red Ford Explorer and also showed the officers where Mr. Yingling lived. (Id. ¶ 4.) The officers drove to the address provided by Mr. Wilkey and saw a red Ford Explorer parked in front of the residence. (Id.) They checked the car registration to confirm that the car was linked to the home. (Id.) The officers then set up surveillance. (Id.) When Mr. Yingling left the residence in his Ford Explorer to meet Mr. Wilkey and make the exchange, he was followed by task force officers who pulled him over for an improper lane change. (Id.) After noticing a strong air freshener scent, the officer making the stop asked Mr. Yingling for permission to search the vehicle. (Id.) The search uncovered a suitcase in the back of the vehicle containing ten pounds of marijuana. (Id.)

Mr. Wilkey had previously informed an undercover officer that he believed Mr. Yingling kept additional marijuana at his residence.[1] (Id. at 4.) Mr. Wilkey informed investigating officers that he believed that Mr. Yingling was obtaining the marijuana from Mr. Fritz, Mr. Yingling's stepfather. (Id. ¶ 5.) The officers confirmed that Mr. Fritz lived in the same house that officers had observed Mr. Yingling leaving before his arrest. (Id.) A background check on Mr. Fritz revealed a substantial criminal history and indicated that he was previously registered with Utah Adult Probation and Parole for committing murder, aggravated assault, and robbery. (Id.) Mr. Fritz also had either been convicted or else had pleaded guilty to obstructing police, resisting arrest, robbery, homicide, and possession of a weapon during those crimes. (Id.)

Mr. Yingling described Mr. Fritz to the officers and Officer Plank later observed a man matching that description leave the residence identified by Mr. Wilkey. (Id. ¶ 7.) Officers made contact with Mr. Fritz when he returned home with his wife, Terry Fritz, at approximately 9:45 p.m.[2] and then secured the residence. (Id. ¶ 8.) At the request of Mrs. Fritz, officers entered the residence to make contact with her two young children. (Id.) At that time, officers noticed "a very strong odor of marijuana in the basement of the residence." (Id.)

According to the testimony offered at the evidentiary hearing held in this matter, Officer Plank began preparing the affidavit in support of the warrant application just after 7:00 p.m., while the traffic stop of Mr. Yingling was still underway. (Tr. 42:2-8.) The final substantive allegation contained in Officer Plank's affidavit is paragraph eight, which mentions the strong

---

[1]Officer Plank apparently added this allegation to his affidavit at the request of the judge issuing the warrant. (Tr. 47:20-49:21.) The statement takes the form of a hand-written margin note on the affidavit. (See Aff. at 4.)

[2]This time is not noted in the affidavit, but the court received testimony at an evidentiary hearing that supports this time approximation. (See Tr. at 46:2-3, 8, 15-19.)

odor of marijuana encountered by investigating officers at Mr. Fritz's residence.  (Aff. ¶ 8.)

The United States has conceded that it is unable to rely on the allegations contained in paragraph eight, but contends that the warrant, even without paragraph eight, was nevertheless properly issued and executed.  Mr. Fritz argues that if investigating officers had not initially entered the home and encountered the smell of marijuana, they would not have sought a search warrant and would not have had probable cause to obtain one.  Officer Plank testified that paragraph eight was "probably included as an afterthought" and that it really "wasn't important at all."  (Tr. at 46:6, 55:1-2.)  The success of Mr. Fritz's motion to suppress hinges on the accuracy of Officer Plank's assessment.

Analysis

The parties agree that a two-prong inquiry governs the outcome of this motion.  First, the court must determine whether the officers would have attempted to secure a search warrant for Mr. Fritz's residence if they had not previously entered the home and noticed the smell of marijuana.  See Murray v. United States, 487 U.S. 533, 542 (1988).  Second, the court must determine if the affidavit submitted in support of the search warrant establishes probable cause if any mention of the odor of marijuana in the residence is removed.  See United States v. Desseaure, 429 F.3d 359, 367 (1st Cir. 2005).

**I.  Officers Would Have Sought a Warrant Even if They Had Not Entered the Home**

The first question that must be addressed is whether the officers "decision to seek a warrant was prompted by what they had [learned] during their initial entry." Murray, 487 U.S. at 542.  Although this inquiry is necessarily subjective in nature, "the district court is not bound by [officers'] after-the-fact assurances of their intent, but must instead assess the totality of the attendant circumstances to ascertain whether those assurances appear implausible." Desseaure,

4

429 F.3d at 369 (internal quotation omitted); see also Devenpeck v. Alford, 543 U.S. 146, 154 (2004) ("[O]f course[,] subjective intent is always determined by objective means . . . .").

      Here, the court is satisfied that the officers were intent on obtaining a search warrant before entering the residence and noticing the smell of marijuana.  The record supports the conclusion that Officer Plank had substantively completed the affidavit and search warrant application before learning that the officers entered the home and detected the scent of marijuana. (Tr. 45:19-46:11.)  In fact, Officer Plank and Officer Nick Kogianes testified that they believed they had probable cause to search Mr. Fritz's home immediately after officers discovered the ten pounds of marijuana in the back of Mr. Yingling's car.  (Id. at 39:22-40:25; 63:7-15.)  This testimony is consistent with Officer Plank's representation that he began to prepare his affidavit while Mr. Yingling was being detained.  (Id. at 42:2-8.)  Officers Plank and Kogianes testified that they would have sought a warrant to search Mr. Fritz's home even if no further information could be obtained.  (Id. at 55:3-7; 57:21-58; 63:16-18.)  Given the continuously mounting evidence the officers uncovered as May 16, 2005, moved toward a close, the court finds the testimony of Officers Plank and Kogianes credible.

      Further, there was an abundance of testimony at the hearing that established that officers stationed at Mr. Fritz's home were aware that the process of obtaining a warrant was underway. (Id. at 8:12-16; 10:9-11:4; 11:16-12:15; 19:2-7; 20:23-21:25; 24:8-17; 28:20-29:2; 29:25-31:18; 38:12-22; 39:4-40:25; 41:15-20; 43:9-44:25; 45:25-46:14; 51:17-23.)  The evidence overwhelmingly supports the conclusion that officers were intent upon searching Mr. Fritz's residence well before the initial entry into the home.  By all indications, the process of obtaining a warrant began several hours before the officers discovered the smell of marijuana in the residence.  The court is convinced that even if officers had not entered the residence and noticed

the smell of marijuana, the process of obtaining a search warrant would have continued unabated. Therefore, the only question that remains is whether officers could have obtained that warrant absent information gained from their initial entry into the home.

## II. The Officers Had Probable Cause Prior to Noticing the Smell of Marijuana

The Tenth Circuit has held that when an affidavit offered in support of a search warrant application contains improperly obtained information, the proper course to follow is to simply remove that information from the application and then determine whether the application nevertheless establishes probable cause. United States v. Anderson, 981 F.2d 1560, 1568-69 (10th Cir. 1995) ("We determine whether the search warrant was issued upon probable cause as supported by facts untainted by the prior illegality." (internal quotation omitted)).

"A search warrant must be supported by probable cause, requiring 'more than mere suspicion but less evidence than is necessary to convict." United States v. Danhauer, 229 F.3d 1002, 1005-06 (10th Cir. 2000) (quoting Untied States v. Burns, 624 F.2d 95, 99 (10th Cir. 1980). "Probable cause undoubtedly requires a nexus between suspected criminal activity and the place to be searched." United States v. Corral-Corral, 899 F.2d 927, 937 (10th Cir. 1990). "An affidavit in support of a search warrant must contain facts sufficient to lead a prudent person to believe that a search would uncover contraband or evidence of criminal activity." Danhauer, 229 F.3d at 1006.

The court is convinced that Officer Plank's affidavit establishes probable cause for a search even if the mention of the odor of marijuana is removed. Initially, officers arrested Mr. Wilkey, who possessed ten pounds of marijuana. Mr. Wilkey informed officers that he obtained the marijuana from Mr. Yingling and that he believed Mr. Yingling had additional marijuana at his residence. Mr. Wilkey also told officers that he believed Mr. Yingling was obtaining the

marijuana from his stepfather, Mr. Fritz. Mr. Wilkey described Mr. Yingling's car and showed officers Mr. Yingling's residence. Officers then confirmed that Mr. Fritz was a resident of the home Mr. Wilkey identified. Officers observed the car described by Mr. Wilkey outside the residence identified by Mr. Wilkey and confirmed that the vehicle was registered to that address. After Mr. Wilkey contacted Mr. Yingling about the possibility of purchasing more marijuana, officers observed Mr. Yingling leave the residence. Shortly thereafter, officers stopped Mr. Yingling's car and discovered another ten pounds of marijuana. Mr. Yingling described Mr. Fritz to the officers and a man matching that description was later observed leaving the residence identified by Mr. Wilkey.

Each of these facts was detailed in Officer Plank's affidavit in support of the search warrant application. The facts establish a nexus between criminal activity--possession and distribution of marijuana--and the location to be searched: the residence of Mr. Fritz and Mr. Yingling. See U.S. v. Sims, 428 F.3d 945, 954 (10th Cir. 2005) ("We review only whether the issuing magistrate or judge had a 'substantial basis' for finding probable cause, requiring 'a practical, common sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or other evidence of a crime will be found in a particular place." (quoting United States v. Cusumano, 83 F.3d 1247, 1250 (10th Cir. 1996) (en banc)).

### Conclusion and Order

The officers in this case were intent on securing a search warrant for Mr. Fritz's home well before the initial entry into the residence uncovered the odor of marijuana. The court is convinced that the officers were in the process of obtaining, and would have obtained, a search warrant for the home even if the initial entry had not occurred. Even when the information

relating to the initial entry of the home is removed from the affidavit, the court concludes that the facts established probable cause justifying the issuance of the warrant. Therefore, Mr. Fritz's Motion to Suppress for Illegal Search and Seizure is DENIED.

DATED this 6th day of March, 2006.

BY THE COURT:

TENA CAMPBELL
United States District Judge